IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAROL MENNUCCI
on behalf of herself and those similarly
situated,

     Plaintiff,

        v.

RANDSTAD PROFESSIONALS US,
LLC, a Foreign Limited Liability
Company,

     Defendant.

CIVIL ACTION FILE
NO. 1:19-CV-4693-TWT

## OPINION AND ORDER

This is a Fair Labor Standards Act ("FLSA") action. It is before the Court

on the Plaintiff's Renewed Motion for Conditional Certification and Judicial

Notice [Doc. 79]. For the reasons set forth below, the Court DENIES the

Plaintiff's Motion for Conditional Certification and Judicial Notice [Doc. 79].

## I.   Background

Plaintiff Carol Mennucci ("Plaintiff" or "Mennucci") is a former employee

of Defendant Randstad Professionals US, LLC ("Defendant" or "Randstad"), a

company which provides flexible work and human resource services to

corporate clients. (Compl. ¶¶ 11, 25.) Relevant here, Randstad has a

"Sourceright" division that offers managed services programs and recruitment

process outsourcing. (*Id.* ¶ 12.) Within this division, Randstad employs thousands

of hourly-paid recruiters, like Mennucci, who screen potential candidates to fill job

openings based on pre-determined requirements of Randstad and its clients. (*Id.* ¶ 29.) On October 21, 2019, Mennucci filed a Collective Action Complaint against Randstad on behalf of herself and other current and former hourly recruiters at Randstad. She alleges pursuant to the FLSA that they are entitled to (1) unpaid wages from Randstad for overtime work for which they did not receive overtime premium pay, (2) liquidated damages, and (3) declaratory relief. (*Id.* ¶ 1.)

Prior to this motion, Mennucci requested conditional certification of a class including all hourly-paid recruiters in Randstad's Sourceright division within the last three years. The Court denied the motion because an overwhelming majority of the proposed class members would have been ineligible to participate due to binding arbitration agreements. (*See* Mar. 2, 2021 Order, at 9.) Since August 2015, Randstad has provided each new hire or re-hire an arbitration agreement that encompasses claims related to overtime compensation, and the Court has already dismissed seven opt-in plaintiffs from this action pursuant to those arbitration agreements. (*See id.* at 7–8.) The Court specifically stated that "the Plaintiff's failure to carve out these individuals and focus on demonstrating the similarity of recruiters who might be potential plaintiffs in this case warrants denial of the motion." (*Id.* at 9.) Less than three weeks later, Mennucci filed this renewed motion to conditionally certify a class of all hourly-paid recruiters in Randstad's Sourceright division, from May 15, 2017, to date, who did *not* sign an agreement to arbitrate claims.

T:\ORDERS\19\Mennucci\renewedclassnoticetwt.docx

## II.    Legal Standard

Section 216(b) of the FLSA permits an employee to bring a collective

action against his employer as follows:

> An action . . . may be maintained against any employer . . . by any
> one or more employees for and in behalf of himself or themselves
> and other employees similarly situated. No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the
> court in which such action is brought.

29 U.S.C. § 216(b). A district court, in appropriate cases, may authorize the

sending of notice to potential class members in a collective action. *See*

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989); *Hipp v.*

*Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Haynes v.*

*Singer Co., Inc.*, 696 F.2d 884, 886–87 (11th Cir. 1983). "The benefits of a

collective action depend on employees receiving accurate and timely notice so

that they can make informed decisions about whether to participate." *Morgan*

*v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (quotation

marks, citation, and punctuation omitted).

The Eleventh Circuit has endorsed a two-tier approach for determining

whether to certify a collective action under Section 216(b):

> The first determination is made at the so-called "notice stage." At
> the notice stage, the district court makes a decision—usually
> based only on the pleadings and affidavits which have been
> submitted—whether notice of the action should be given to
> potential class members. Because the court has minimal
> evidence, this determination is made using a fairly lenient
> standard, and typically results in "conditional certification" of a
> representative class. If the district court "conditionally certifies"

T:\ORDERS\19\Mennucci\renewedclassnoticetwt.docx

the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp*, 252 F.3d at 1218 (citation omitted). The second stage of the certification process is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* Based on the factual information gathered in discovery, the district court determines whether the claimants are actually similarly situated and, if not, decertifies the class so that the original plaintiffs may proceed to trial on their individual claims. *See id.* Ultimately, "the decision to create an opt-in class under [Section] 216(b) . . . remains soundly within the discretion of the district court." *Id.* at 1219.

The plaintiffs bear the burden of demonstrating that they are similarly situated with the group of employees they wish to represent. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). While "similarly situated" is not defined in the FLSA, the Eleventh Circuit has advised that "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (citation omitted); *see also Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1568 (11th Cir. 1991) (measuring similarity according to "job requirements" and "pay provisions"). "A unified policy, plan, or scheme of discrimination may not be required to satisfy" the similarly-situated requirement. *Hipp*, 252 F.3d at 1219 (citation omitted). However, a plaintiff "must make some rudimentary showing

4

of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); *see also Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (requiring "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan").

### III.   Discussion

As stated above, the Court previously denied Mennucci's motion for conditional certification because she failed (1) to carve out of her collective action any recruiter bound by an arbitration agreement and (2) to demonstrate the similarity of recruiters who might actually be potential plaintiffs in this case. Now, Mennucci asks the Court to conditionally certify the same class, except those bound to arbitration. In support of her renewed motion, she presents six declarations from current or former Randstad employees, excluding her own: two were prepared by individuals who are subject to arbitration agreements and thus are not eligible to opt into the proposed class (Holness Decl.; Gil Decl.); three were submitted with her first certification request and thus refer to the now-rejected broader collective action (Chamber Decl.; Lester Decl.; Crainshaw Decl.); and that leaves just one new declaration from a potentially eligible plaintiff. (Peek Decl.) These declarations, which repeat verbatim the testimony from the first motion for conditional certification, wholly fail to distinguish between recruiters who are bound to

5

arbitration and those who are not, as the Court emphasized in its prior order. (*Compare, e.g.*, Peek Decl. ¶¶ 6–14, *with* Johnson Decl. ¶¶ 6–14.)

Nor do the declarations provide any evidence of a common unlawful policy that binds Mennucci, the op-in plaintiffs, and the putative class members together. "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005). Mennucci's central allegation is that Randstad maintains a "common timekeeping and pay scheme whereby it requires its recruiters to work far in excess of 40 hours per week, refuses to credit all hours worked and thus, refuses to pay for all such overtime hours worked." (Compl. ¶ 33; *see also* Pl.'s Renewed Mot. for Conditional Certification, at 2–3 ("Randstad engages in a companywide policy and practice . . . whereby Randstad prohibits the recruiters from reporting their overtime hours . . . .")). She contends that the declarants back up this claim because the "RPO recruiters all worked overtime and were explicitly discouraged by Randstad from recording, or instructed not to record, more than 40 hours in a workweek." (Reply Br. in Supp. of Pl.'s Renewed Mot. for Conditional Certification, at 9). However, a review of the declarations reveals no such details about Randstad or its alleged timekeeping instructions.

All six of the declarations contain the following identical allegations: (1) the recruiter was required to hit certain quotas or metrics each pay period or

T:\ORDERS\19\Mennucci\renewedclassnoticetwt.docx

else face a write-up or termination; (2) Randstad and its supervisors regularly encouraged the recruiter to work more than 40 hours in a workweek to reach the quotas; (3) with rare exceptions, the recruiter was not paid time and a half for hours worked over 40 in a workweek; and (4) the recruiter observed that Randstad did this to other similarly situated hourly recruiters. (*See* Peek Decl. ¶¶ 9–13; Chambers Decl. ¶¶ 9–13; Lester Decl. ¶¶ 9–13; Gil Decl. ¶¶ 9–13; Crainshaw Decl. ¶¶ 9–13; Holness Decl. ¶¶ 9–13.) The Court agrees with Randstad that these conclusory statements describe an unlawful result (*i.e.*, nonpayment of overtime wages), but it is impossible to infer from them any unlawful policy leading to that result:

> No one states, for example, that they reported overtime on their timecards, only to have the timecard rejected. Nor do they say that their supervisors instructed or even pressured them to not report, or under-report, their overtime hours. The declarants do not suggest that their supervisors instructed them to do, or refused to do, anything in violation of the timekeeping policy that each of them received, that they certified compliance with each week when they submitted their timecards, and that their supervisors were trained on.

(Def.'s Br. in Opp'n to Pl.'s Renewed Mot. for Conditional Certification, at 8.)

Even if the declarations spoke to an unlawful policy, they still would not show that the policy is common to all of the recruiters Mennucci seeks to represent. As explained above, the proposed collective action includes all hourly-paid recruiters in Randstad's Sourceright division within the last four years, except those who signed arbitration agreements. The Sourceright division is composed of "several different business lines, each of which is

separately managed and provides a distinct outsourced solution to its respective clients," such as payroll services, contingent workforce management, and permanent workforce recruitment. (Grondin Decl. ¶ 5.) There is further demarcation within each business line: in the Recruitment Process Outsourcing ("RPO") group, for example, managers and employees are assigned to specific client accounts—sometimes one and sometimes two or three depending on the size of the client. (*Id.* ¶¶ 9–10.) Since October 2016, Randstad has employed more than 2,000 recruiters and done work for hundreds of clients in the RPO group alone. (*Id.* ¶¶ 7, 9.)

Although Mennucci's proposed class would encompass all recruiters in the entire Sourceright division, the declarations address only a small sliver of this expansive corporate structure. First, Mennucci and the other declarants were all part of the RPO group and thus do not reflect the experiences of recruiters in any other Sourceright business line. (Grondin Decl. ¶ 8.) Second, five of the six declarants worked only on the Honeywell account and say nothing about the hundreds of other client accounts that Mennucci seeks to lump together.[1] (Mennucci Decl. ¶ 5; Chambers Decl. ¶ 5; Lester Decl. ¶ 5; Gil

---

[1] On reply, Mennucci cites three declarations from her original certification request to show that recruiters were required to work off-the-clock on several client accounts. (Reply Br. in Supp. of Renewed Mot. for Conditional Certification, at 8.) However, each of these declarations was made by a recruiter who was dismissed from this action due to an arbitration agreement, and Mennucci declined to resubmit them—likely for that reason—in support of her renewed motion. Mennucci's failure to identify a single *eligible* recruiter outside of the Honeywell account that has been denied overtime compensation,

8

Decl. ¶ 5; Crainshaw Decl. ¶ 5; Peek Decl. ¶ 5.) By contrast, Randstad has provided evidence that the frequency of overtime wages differs significantly depending on the client account, with Honeywell recruiters earning overtime pay three to ten times less often than some others. (Grondin Decl. ¶¶ 10, 14.) This fact strongly militates against collective action: where different supervisors may enforce different timekeeping practices on different client accounts, an individualized, fact-specific inquiry would be required to determine how often and why some recruiters were not paid overtime.[2] "The need for individualized inquiries would contravene the basic theory of judicial economy upon which the certification of collective actions is based." *West v.*

---

significantly weakens her case for collective action. This lack of evidence is all the more inexcusable given that discovery was ongoing for more than a year when Mennucci filed her renewed motion.

[2] Some courts have authorized collective notice of FLSA claims even if those claims "may later require a more individualized inquiry," putting off the question whether a collection action would be "unmanageable" until further discovery has been conducted. *Allen v. City of Chi.*, No. 10 C 3183, 2013 WL 146389, at *8 (N.D. Ill. Jan. 14, 2013) (citation omitted); *see also Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 267 (D. Conn. 2020). The Court declines to follow suit in this case given that discovery was open for more than a year when Mennucci filed the renewed motion. Because she had ample opportunity to amass evidence in support of her collective action allegations, it is appropriate "to apply a stricter, more searching, standard of review than that advocated in *Hipp* for a first-stage review." *Pickering v. Lorillard Tobacco Co., Inc.*, No. 2:10-CV-633-WKW, 2012 WL 314691, at *9 (M.D. Ala. Jan. 30, 2012) (decided after four months of discovery); *see also Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887-T-24-MAP, 2017 WL 892604, at *4 (M.D. Fla. Mar. 6, 2017) (concluding, based on six months of discovery, "[i]t makes little sense . . . to hold Plaintiff to the 'fairly lenient,' pre-discovery *Hipp* standard"); *Udo v. Lincare, Inc.*, No. 8:13-cv-1899-T-23TGW, 2014 WL 5354589, at *10 (M.D. Fla. Sept. 17, 2014) (declining to apply first-stage *Hipp* analysis when the case was ongoing for seven months and the parties had begun taking depositions).

*Verizon Commc'ns, Inc.,* No. 8:08–cv–1325–T–33MAP, 2009 WL 2957963, at *7 (M.D. Fla. Sept. 10, 2009).

The Court's findings are consistent with decisions in this circuit and across the country denying conditional certification where, as here, plaintiffs attribute their personal circumstances or the misconduct of individual supervisors to some generally applicable corporate policy.[3] *See, e.g., Hart v. JPMorgan Chase Bank, N.A.,* No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) ("[G]iven that the putative class members were subject to, *inter alia,* different supervisors [and] timekeeping practices . . . . plaintiff-specific inquiries would be required as to . . . whether plaintiffs actually worked 'off the clock,' whether plaintiffs modified their time records to reflect the actual time worked, whether plaintiffs' supervisors were aware of any 'off-the-clock' work, whether plaintiffs agreed to mandatory arbitration, and whether any 'off-the-clock' work fell within the *de minimis* exception to the FLSA"); *Williams v. Accredited Home Lenders, Inc.,* No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 (N.D. Ga. July 25, 2006) (denying class certification where the evidence showed that "some loan officers were paid overtime and some were not," setting up "a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities"); *Hannah v. Huntington Nat'l Bank,* No. 18-

---

[3] Again, Mennucci cites no evidence that Randstad's alleged FLSA violations are the result of its supervisors' actions, so the Court can only guess at her theory of liability.

cv-7564, 2020 WL 2571898, at *7–8 (N.D. Ill. May 21, 2020) (refusing to certify a company-wide class based on the alleged misconduct of one manager in one office and collecting similar cases); *West v. Border Foods, Inc.*, No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *9 (D. Minn. July 10, 2006) (denying class certification because the Plaintiffs were employed at different store locations, where different individual restaurant managers allegedly used varying means to deprive the Plaintiffs of proper compensation for his or her overtime work and collecting cases where off-the-clock claims similarly required "significant individual considerations").

In sum, Mennucci has failed to correct one of the central shortcomings in her original certification request: that is, "demonstrating the similarity of recruiters who might be potential plaintiffs in this case[.]" (Mar. 2, 2021 Order, at 9.) She continues to rely on declarations from recruiters who are subject to arbitration agreements and thus are not eligible to participate in her proposed class. The other declarations fare no better given that they recite verbatim the same allegations relied upon in her prior unsuccessful motion to certify a much broader collective action. Importantly, these allegations do not address whether any unpaid overtime wages are traceable to a policy or practice of Randstad or its supervisors, or whether any such policy or practice applies to recruiters throughout the Sourceright division, beyond the Honeywell account in the RPO group. Without this information, Mennucci cannot meet her burden of making a rudimentary showing of commonality between her claims and the

T:\ORDERS\19\Mennucci\renewedclassnoticetwt.docx

potential claims of the putative class. Therefore, the Court denies Mennucci's

Renewed Motion for Conditional Certification and Judicial Notice.

## IV.   Conclusion

For the reasons set forth above, the Plaintiff's Renewed Motion for

Conditional Certification and Judicial Notice [Doc. 79] is DENIED.

SO ORDERED, this 14 day of October, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

12